C. Tal WOOTEN, Jr.,
Plaintiff–Appellant–Respondent,

v.

Harry R. DeMEAN and Dorothy De-
Mean,
Defendants–Appellants–Respondents.

Nos. 16373, 16374.

Missouri Court of Appeals,
Southern District,
Division Two.

April 23, 1990.

Warren S. Stafford, Monte P. Clithero, Taylor, Stafford, Woody, Cowherd & Clithero, Springfield, for plaintiff-appellant-respondent C. Tal Wooten, Jr.

Stephen P. Seigel, Springfield, for defendants-appellants-respondents Harry and Dorothy DeMean.

FLANIGAN, Presiding Judge.

This action arises out of a real estate contract entered into on July 1, 1985, between C. Tal Wooten, Jr., plaintiff-buyer, and Harry R. DeMean and his wife Dorothy DeMean, defendants-sellers. The property involved was an office building and lot known as the Courtyard Office Center and located in Springfield. The purchase price was $1,282,398.38. The closing date, so Wooten contends, was October 16, 1985. Prior to that date, a dispute arose between the parties and the contract was not carried out. In 1986 the DeMeans sold the property to another buyer for $1,650,000.

In October 1985, Wooten brought this action for breach of contract against the DeMeans. The petition sought $400,000 in damages for "loss of the benefit of the bargain," $50,000 for "out-of-pocket expenses," and attorneys' fees. The last item was based on a provision of the contract allowing recovery of attorneys' fees to the prevailing party in the event of a contract dispute.

The answer of the DeMeans alleged failure of performance on the part of Wooten and also alleged that Wooten had "anticipatorily breached" the contract. The De-

Means also filed a counterclaim seeking $25,000 in damages, together with attorneys' fees, based on Wooten's alleged anticipatory breach and nonperformance.

After a nonjury trial, the trial court made extensive findings, found the issues in favor of Wooten on the petition, and awarded him damages of $167,602, together with $30,146.25 for attorneys' fees. The court also found in favor of Wooten and against the DeMeans on the counterclaim. Both sides appeal.

In general, the DeMeans contend: (a) Wooten should have been denied relief on his petition and the DeMeans should have been granted judgment on their counterclaim because Wooten breached the agreement and repudiated it; (b) the contract was unenforceable because it was vague and also because it lacked mutuality in that Wooten had no duty to perform; (c) Wooten's evidence with respect to the value of the property on the closing date was insufficient to support an award of damages in his favor; the testimony of Robert Harrison, Wooten's real estate expert concerning the value of the property, should not have been admitted.

On his appeal, Wooten contends that the amount awarded him on the petition was insufficient and that he was entitled to a minimum award of $367,601.70. This opinion will dispose of both appeals and will first consider the appeal of the DeMeans.

### APPEAL OF THE
### DeMEANS—No. 16373

█ The DeMeans' first point is that the trial court erred in granting Wooten relief on his petition and in denying them relief on their counterclaim because Wooten repudiated the contract prior to the closing date by changing the terms of the contract and by stating to Mrs. DeMean that he considered the contract to be no longer in effect.

█ Appellate review of this court-tried case is governed by Rule 73.01(c), V.A.M.R. This court must give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

The contract was entered into on July 1, 1985. The purchase price, which the parties have stipulated to be $1,282,398.38, was to be paid at time of closing. There was no down payment. The DeMeans were purchasing the property under a contract for a deed from one Withers, et al., and the property was subject to a mortgage in favor of "Roosevelt Federal."

The financing arrangements were, in essence, that Wooten, on date of closing, was to discharge the lien of Roosevelt Federal, discharge the balance owed by the DeMeans to Withers under the contract for a deed, pay $330,677.85 in cash to the DeMeans, and give the DeMeans a promissory note in the amount of $225,000 secured by a second deed of trust on the property.

The general theme of the complicated financial provisions of the contract was that Wooten was to give a first deed of trust and a third deed of trust to outside lenders, and Wooten was to give a second deed of trust to the DeMeans securing the $225,000 note. If the note secured by the first deed of trust exceeded $875,000 (and in fact it did not), Wooten was to provide to the DeMeans additional collateral for the $225,000 note.

Paragraph 13 of the agreement contained a "special condition" which in effect addressed the ability of Wooten to obtain the loans to be represented by the first and third deeds of trust. Paragraph 13 contained this language: "This special condition to closing shall be deemed waived by [Wooten] unless [Wooten] notifies [DeMeans' attorney Jim Sivils] to the contrary, in writing, on or before 55 business days from the date of execution of this agreement by all parties." Wooten signed the agreement on July 1, 1985, and the DeMeans signed it a day or two earlier.

During the making of the agreement, and for several months thereafter, Wooten

was represented by attorney Joe Greene and the DeMeans were represented by attorney Jim Sivils. The parties stipulated that "about the middle" of September 1985, the DeMeans fired Sivils and hired Stephen Seigel as their attorney.

On July 1, 1985, attorney Greene wrote attorney Sivils and told him that he calculated, using the "55 business days" factor, that Wooten's deadline for invoking paragraph 13 was August 31. During the summer some differences arose between the parties. On August 29 attorney Greene prepared a letter addressed to the DeMeans and their attorney Sivils, in which he stated that the 55th business day following the agreement would occur on September 18.

On August 30 a conference, held in attorney Greene's office, was attended by Wooten, attorney Greene, Mrs. DeMean and attorney Sivils. During that conference attorney Sivils, in the presence of Mrs. DeMean, initialed Greene's letter of August 29, and agreed that September 18 was the deadline for Wooten to invoke paragraph 13. Greene testified that at the conference it was agreed that a "business day" meant "a week day unless it was a holiday . . . do not count Saturdays or Sundays." Also at that conference the parties discussed additional terms which were to be reduced to writing by attorney Greene and signed by the parties. Mr. Greene prepared a document entitled "First Amendment to Agreement," received into evidence as Exhibit 4. Although Wooten later signed Exhibit 4, the Demeans, thereafter, refused to sign it and fired attorney Sivils.

Attorney Greene testified that during the conference of August 30, the parties "shook hands" with regard to the terms which were later reduced to writing as Exhibit 4. He also testified that about September 12 Sivils telephoned him and told him that the DeMeans had not signed Exhibit 4 and that Sivils was embarrassed by that fact. Greene testified that at no time during the conference of August 30

did Wooten make any statement indicating an intention not to follow through with the original agreement if Exhibit 4 was not executed.

On September 19 attorney Greene wrote a letter to the DeMeans, attorney Sivils and their new attorney Seigel, in which he stated that paragraph 13 of the agreement, in accordance with its terms, had been waived by Wooten and that the note secured by the first deed of trust would not exceed the sum of $875,000.[1] The letter also stated that the closing date would be October 16, 1985, in accordance with the agreement which provided that the transaction was to be closed on the 20th business day following the waiver of paragraph 13, which occurred on September 18.

Greene testified that at no time prior to September 19 did the DeMeans or either of their attorneys tell Greene that the DeMeans considered the contract breached or that the DeMeans did not intend to close. Greene also testified that at one time after September 19 attorney Seigel told Greene that the DeMeans were not going to close "unless we would come up with another $200,000 over the original contract."

On October 11 attorney Greene again wrote the DeMeans and attorneys Sivils and Seigel and reaffirmed the closing date of October 16. That letter stated, among other things, "The [DeMeans] have not, despite repeated demands, indicated why they are refusing to close the agreement in accordance with its existing terms." There was no response to that letter.

On October 16, Wooten, attorney Greene, and some bankers appeared at the agreed place for the closing, but the DeMeans and attorney Seigel failed to appear. Wooten was ready, willing and able to close the matter at that time.

Wooten testified that he never told the DeMeans that he was not going to close. He also testified that several points were negotiated at the August 30 meeting, "we shook hands and agreed on it," and those terms were embodied in Exhibit 4.

1. Actually the letter said the note would not exceed the sum of $870,000, a misprint. Of course if it did not exceed that figure it would

not exceed $875,000, so the misprint is of no moment and the DeMeans do not contend otherwise.

Defendant Dorothy DeMean testified that Wooten told her, before September 5, that "if I didn't take less cash at the closing he would not go through with the contract." She also testified that after she saw Exhibit 4 she told Wooten on the telephone that she was not going to close. On cross-examination she testified, "I did not close under the agreement because Wooten kept coming up with different proposals. . . . I was not willing to close under the original contract after [Exhibit 4] showed up."

Defendant Harry DeMean testified, on cross-examination, that he did not appear at the closing because "I never got any documents to show they had the collateral for the note. . . . Also they came up with [Exhibit 4]." The collateral testimony was in reference to the additional collateral which, under the terms of the agreement, was unnecessary because the note secured by the first deed of trust did not exceed $875,000.

The trial court found, among other things, that Wooten waived paragraph 13 on September 18 and that the closing date was October 16. It further found: Attorney Seigel informed attorney Greene that the DeMeans would not close and gave no reason except that they would not do so unless the purchase price was increased $200,000; at all times prior to October 16 Wooten was ready, willing and able to close according to the terms of the original agreement; the discussion concerning the terms contained in Exhibit 4 did not change the obligation of the parties with regard to the original agreement; Wooten complied with all the terms of the agreement; the DeMeans had refused to close and had breached the agreement. He further found a reasonable attorneys' fee to be $30,146.25, a finding unchallenged by the DeMeans here.

■ "[W]here one party to a contract repudiates it and manifests an intention not to perform, the duty of the other party is terminated . . . but such a repudiation is shown only by the disclosure of a positive intention not to perform the contract, by express statements or otherwise." *Ewing v. Miller*, 335 S.W.2d 154, 158 (Mo.1960). To similar effect see *Carmel v. Dieckmann*, 617 S.W.2d 459, 460–61[1–3] (Mo. App.1981); *Gateway Aviation, Inc. v. Cessna Aircraft*, 577 S.W.2d 860, 862[2, 3] (Mo.App.1978); *Cork Plumbing Co. v. Martin Bloom Associates*, 573 S.W.2d 947, 956[5–7] (Mo.App.1978). The mere making of a request by a buyer for more than he is entitled to is not a breach of the contract which gives the seller a right to rescind. *Lazare v. Hoffman*, 444 S.W.2d 446, 452 (Mo.1969).

■ An anticipatory breach of a contract is not established by an attitude "which indicates more negotiations are sought." *Palmiero v. Spada Distributing Co.*, 217 F.2d 561, 565[2, 3] (9th Cir.1954). To similar effect see *Quivirian Development Co. v. Poteet*, 268 F.2d 433, 439 (8th Cir.1959). 17A C.J.S. Contracts § 472(2), p. 662; 17 Am.Jur.2d Contracts § 448, p. 912. Mere requests to change the terms of a contract are not, in and of themselves, enough to constitute repudiation. *Rosenbloom v. Feiler*, 290 Md. 598, 431 A.2d 102, 111 (1981); *Henderson v. Lemna*, 76 Ill.App.3d 168, 31 Ill.Dec. 752, 754, 394 N.E.2d 1070, 1072 (1979); *Stonecipher v. Pillatsch*, 30 Ill.App.3d 140, 332 N.E.2d 151, 153–54 (1975). Corbin on Contracts (1952 ed.) § 973; Williston (3d ed.) (1968) § 1322 at 133.

The DeMeans' first point, so the trial court found on conflicting evidence, lacks factual support. The holding of the conference on August 30 and the preparation by attorney Greene of Exhibit 4 pursuant to the conference did not constitute a repudiation by Wooten of the contract. At most it was a mere request to change the terms of the contract, unaccompanied by any ultimatum that if the changes were not made Wooten would consider the contract at an end. Wooten's testimony, as well as that of attorney Greene, was to the effect that Wooten was at all times ready, willing and able to perform and that he never indicated otherwise. Although Mrs. DeMean's testimony conflicted on that point, the trial court saw fit to believe the two men and not to believe her. The power of this court

to set aside the judgment of the trial court on the ground that it is against the weight of the evidence must be exercised "with caution" and "with a firm belief" that the trial court is wrong. *Murphy v. Carron,* supra. This court has no such firm belief. The DeMeans' first point has no merit.

■ The DeMeans' second point is that the contract was unenforceable because it was vague and also because it lacked mutuality in that Wooten had no duty to perform.

In support of their argument on vagueness, the DeMeans state: "The alleged date upon which the contract was to be closed was not stated in the contract and was not sufficiently definite as to be enforceable." This argument deals with the "55 business days" language of paragraph 13 of the agreement, coupled with the additional language in the agreement which provided that the transaction was to be closed on the 20th business day following the waiver of paragraph 13. Any ambiguity in these dates was resolved at the conference on August 30 when attorney Sivils, in the presence of Mrs. DeMean, initialed Greene's letter of August 29. There the parties agreed that September 18 was the deadline for Wooten to invoke paragraph 13. In Greene's letter of September 19, he calculated the closing date as October 16 in accordance with the formula contained in the agreement. At no time did the DeMeans or their attorney, prior to October 16, express dissatisfaction with that date or the method of calculating it. There is no merit in the DeMeans' assertion that the contract was unenforceably vague.

■ In arguing that the contract lacked mutuality, the DeMeans point to the provision which conditioned performance upon Wooten's ability to obtain outside financing. The presence of such a provision does not invalidate the contract. The provision is a condition subsequent, *Maynard v. Bazazzadegan,* 732 S.W.2d 950, 954 (Mo. App.1987); *Flores v. Baker,* 678 S.W.2d 884, 886–87 (Mo.App.1984); *Century 21 Al Burack Rltrs. v. Zigler,* 628 S.W.2d 915, 916 (Mo.App.1982); *Berger v. McBride & Son Builders, Inc.,* 447 S.W.2d 18, 19–20

(Mo.App.1969), that is, "one which by its express terms provides for an ipso facto cancellation on the happening or non-occurrence of a stipulated event or condition." *Berger v. McBride & Son Builders, Inc., supra,* at 19. Although the agreement did not impose upon Wooten an express obligation to use reasonable efforts to obtain the financing set forth in the contract, such an obligation is implied by law. *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 178[2] (Mo.App.1984); *Edward L. Bakewell, Inc. v. Kroeger,* 617 S.W.2d 447, 451 (Mo.App.1981). See 78 A.L.R.3d 880 (sufficiency of real-estate buyer's effort to secure financing upon which sale is contingent). Of course the fact is that Wooten did obtain the necessary financing. The DeMeans' second point has no merit.

■ The DeMeans' third point is that Wooten's evidence with respect to the value of the property on the closing date was insufficient to support an award of damages in his favor and that the trial court erred in receiving into evidence the testimony of Robert Harrison, Wooten's real estate expert, concerning the value of the property.

Upon the breach by the seller of a contract for the sale of real estate, the buyer is entitled to damages "in a sum equal to the difference between the unpaid part of [the] agreed purchase price and the market price of the land." *Wilt v. Waterfield,* 273 S.W.2d 290, 296 (Mo.1954). The buyer is entitled to the benefit of his bargain, that is, whatever net gain he would have made under the contract. *Boten v. Brecklein,* 452 S.W.2d 86, 93 (Mo.1970). The "general measure of damages for breach of a contract for the sale of land with a structure thereon is the difference between the purchase price and the fair market value of the property on the date of breach." *Construction Enterprises, Inc. v. Schaeffer,* 562 S.W.2d 799, 800 (Mo.App.1978). It has also been said that the measure of damages "is the difference between the contract price and the fair market value of the property on the date the sale should have been completed." *Leonard v. American*

*Walnut Co., Inc.,* 609 S.W.2d 452, 455 (Mo. App.1980).

Wooten made no down payment. The DeMeans breached the agreement by not appearing on the date of the closing, October 16, 1985. The inquiry is: What is the difference between the contract price ($1,282,398.38) and the fair market value of the property on that date? The testimony conflicted with respect to the latter factor.

Robert Harrison, a real estate expert called by Wooten, testified that the fair market value of the property on October 16, 1985, was $1,760,000. Von Zimmerman, a real estate expert called by the DeMeans, testified that the fair market value of the property on October 16, 1985, was "in the area of $1,200,000." Robert Jaudes, a "commercial appraiser" called by the De-Means, testified that the market value was $1,189,600 in October 1985. Harry De-mean testified that the property had a value of around $1,200,000 on July 1, 1985. He also testified that the property was sold on June 23, 1986, for $1,650,000 but that prior to that sale and after the Wooten/De-Mean contract had been entered into, the DeMeans spent "$15,000 to $20,000" for improvements. The trial court found that the fair market value of the property on October 16, 1985, was $1,450,000.

Conflicts in the evidence concerning real estate values are for resolution by the fact finder. *State v. Salmark Home Builders, Inc.,* 375 S.W.2d 92, 100 (Mo.1964); *Earney v. Clay,* 516 S.W.2d 59, 65–66 (Mo.App.1974). The fact finder, in this case the trial court, need not make his finding "precisely coincide" with the testimony of any particular expert. *State ex rel. State Highway Commission v. Grissom,* 439 S.W.2d 13, 15–16 (Mo.App.1969). It is sufficient if the value set by the fact finder is "within the range" of the evidence. *Id.* To similar effect see *City of Lee's Summit v. Hinck,* 618 S.W.2d 719, 721 (Mo.App.1981).

The DeMeans' attempt to challenge the testimony of Wooten's expert Robert Harrison rings hollow because, in a pretrial stipulation, the parties agreed that if Harrison were to appear and testify, as he did,

he would testify that the fair market value of the property "as of July 18, (sic) 1985, was $1,760,000." Moreover, the DeMeans made no objection to any portion of Harrison's testimony. "If there has been no objection in the trial court to the competency ... or to the qualification ... of a witness, none may be interposed on appeal." *Earney v. Clay,* supra, 516 S.W.2d at 66.

The evidence was sufficient to support the finding of the trial court with respect to the value of the property on the closing date. The DeMeans' third point has no merit.

The DeMeans' appeal has no merit.

### APPEAL OF WOOTEN—No. 16374

Wooten's sole point is that the trial court's award of damages in the amount of $167,602 is inadequate and against the weight of the evidence, and that the award should have been $367,601.70. In support of the latter figure, Wooten argues that the only probative and competent evidence "established the fair market value of the property on the date of the breach at a minimum of $1,650,000 and the sales price was admittedly $1,282,398.38, thus establishing Wooten's damages at a minimum of $367,601.70."

This court's discussion of the DeMeans' third point sets forth some of the evidence with respect to the fair market value of the property on October 16, 1985, the date on which Wooten was entitled to performance and also the date of the DeMeans' breach.

There was evidence to support the trial court's finding that the value of the property on the date of the breach was $1,450,-000. Except for a few cents, that was the figure on which the damage award was based.

In his excellent brief, Wooten challenges the weight of the testimony of the various witnesses. He also emphasizes the fact that the property sold in 1986 for $1,650,-000. He argues that the sale price was the figure which the trial court, under all the evidence, should have utilized.

There was testimony by Harry DeMean that prior to the sale in 1986 the DeMeans spent $15,000 to $20,000 on improvements. Those expenditures were made after the Wooten/DeMean contract was entered into. There was also evidence that during the interim between the October 1985 breach and the 1986 sale, interest rates declined and rents increased. Both of those factors tended to increase the market value of the property. There was also testimony that in October 1985, ⅔ of the leases of the offices located in the property were of the month-to-month variety or would expire before the end of 1985.

Witness Zimmerman, the DeMeans' real estate expert, was the broker in the 1986 sale. He testified, on cross-examination by Wooten's counsel, that there were "some extreme risk factors for DeMeans in the way we sold the property [in 1986]." He said, "The buyer basically obtained a new first mortgage at 1.1 million and DeMeans carried back four hundred and fifty thousand plus deferred interest on the four hundred fifty thousand. So based on that reasoning, I would say in my opinion the 1.6 million was a realistic figure under the way it was sold with those particular terms, but not on a cash sale basis. No." Zimmerman further testified, on cross-examination, that the original sale to the buyer who purchased the property in 1986 "was a negotiated a million six. It was raised because the buyer was a broker in the state of Arizona and wanted brokerage fees, participation fees, so it was raised to a million six fifty."

In the appeal of the DeMeans, this court upheld the trial court's valuation of $1,450,000 on the date of the breach. On his appeal Wooten is, in effect, arguing that there was credible evidence to support a higher valuation and that the trial court's finding is against the weight of all the credible evidence. This court's review of the entire record, including the factors previously mentioned, does not produce a firm conviction that the trial court's finding was against the weight of the evidence. That finding was in fact supported by substantial evidence.

Wooten's appeal has no merit.

■ Wooten filed in this court a motion requesting the sum of $7,942.63 for attorney's fees and expenses incurred during the pendency of the appeal. The attorneys' fee portion of that sum is $6,177.50. The motion is based upon the provision of the contract which permits "the prevailing party ... to recover from the non-prevailing party all of its reasonable attorneys' fees and litigation expenses." The DeMeans filed no response to Wooten's motion.

Authority exists that this court, in view of the contractual provision, may make an allowance for attorneys' fees and expenses incurred on appeal by the prevailing party. *Tull v. Housing Auth. of City of Columbia,* 691 S.W.2d 940, 943[8] (Mo.App.1985).

This litigation should end. Wooten's request for attorney's fees makes no differentiation between time spent in prosecution of his unsuccessful appeal and time spent in defending the unsuccessful appeal of the DeMeans. Further, in the interest of simplification, this court concludes that the trial court's judgment should be amended as of the date of its rendition. Considering those factors, this court concludes that a reasonable allowance, as of the date of the original judgment, for the fees and expenses incurred on appeal is $5,000.

The judgment of the trial court is hereby amended so as to change the amount labeled as "plaintiff's attorneys' fees," from the sum of $30,146.25 to the sum of $35,146.25. As so amended, and in all other respects, the judgment is affirmed. Court costs on appeal are taxed one-half to Wooten and one-half to the DeMeans.

PREWITT and CROW, JJ., concur.