John Thomas SPENCER, Appellant–Respondent,

v.

MILLSTONE MARINA, INC., Respondent–Appellant.

Nos. WD 48775, WD 48803.

Missouri Court of Appeals, Western District.

Dec. 13, 1994.

George G. Allen Jr., Kansas City, for appellant-respondent.

David P. Chamberlain, Liberty, for respondent-appellant.

Before SPINDEN, P.J., and
LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

When John Thomas Spencer sued Millstone Marina, Inc., for breaching an employment contract, the trial court directed a verdict for Spencer on the liability issue. It submitted only the damages issue to the jury which returned a verdict of $50,000 for Spencer. The trial court on its own initiative ordered a new trial on the damages issue because of what the court deemed Spencer's improper closing argument. Both parties appeal.

Spencer asserts in his appeal that the trial court erred in granting a new trial as to the issue of damages. He claims that even if his closing argument was improper, it did not influence the verdict.

In its cross-appeal, Millstone Marina contends that the trial court erred in refusing to instruct the jury regarding a substitute contract or a novation agreement and in refusing to give its mitigation of damages instruction. Millstone Marina also contends that the trial court erred in granting Spencer's motion for directed verdict at the close of all the evidence as to the issue of liability. We affirm the trial court's judgment in all respects.

On November 29, 1991, Spencer entered into a three-year employment contract with Millstone Marina to work as general manager for a base salary of $5,000 a month. Spencer, who lived in the Kansas City area

when he signed the contract, moved to the Lake of the Ozarks and began his job in January 1992.

Millstone Marina sent Spencer a set of instructions called "Policies" and a handwritten memo, dated June 24, 1992, which said that "these policies and any further policies received by you are to be construed as directives which must be in place within 10 days, or they can be considered 'cause' for termination. All policies are considered to be of a continuing nature and are to be kept in place after the 10 day period until further notice." The policies outlined Spencer's responsibilities as general manager.

On September 8, 1992, Spencer received a memorandum from Doug Thomson, general counsel of Millstone Marina, which said:

> As we discussed during our meeting of September 1, 1992, at this time we are exercising our rights under Section 12 of the Employment Agreement entered into between you and Millstone Marina, Inc., on the 29th day of November, 1991, and terminating your employment under such Employment Agreement for cause. We would like to continue in a relationship with you whereby you would be employed in a sales capacity, the details of which are discussed in a separate memo.

Spencer denied that he met with Doug Thomson on September 1, 1992, and denied that Thomson tried to terminate his employment contract on September 1, 1992. After Spencer received the memorandum, he began looking for new employment, but he continued working at Millstone Marina until October 11, 1992.

On November 16, 1992, Spencer sued Millstone Marina claiming that Millstone Marina breached the employment agreement. After a jury trial, at the close of all the evidence, the trial court granted Spencer's motion for directed verdict as to the liability issue. The trial court found as a matter of law that Millstone Marina had breached the employment agreement. The only issue that remained for the jury was the amount of damages. The jury awarded Spencer $50,000 in damages.

Millstone Marina filed a motion for judgment notwithstanding the verdict, motion to set aside verdict or, in the alternative, a motion for new trial. The trial court denied Millstone Marina's motion but, *sua sponte*, granted a new trial on the damages issue because of Spencer's closing argument. The court said:

> The Court grants defendant a new trial on damages only on it's [sic] own Motion becuase [sic] of the conduct of plaintiffs counsel in closing argument. Plaintiffs counsel argued that plaintiff "... is an honest, honest and honorable man. And that's why the Court directed a verdict for him." The reason stated for the directed verdict was not true. The argument was improper, prejudicial and inflammatory. The amount of the verdict was so high as to indicate the effect of the improper, prejudicial and inflammatory argument.

Spencer contends that the trial court erred when it granted, on its own motion, a new trial on damages because, notwithstanding the argument, the jury's award was reasonable given the evidence submitted. He contends that the evidence established that he lost income amounting to $15,000 and that he incurred $26,892.92 in attorneys' fees and $2662.50 in expert witness' fees. The total of these damages was $44,555.42, or 89 percent of the $50,000 verdict. Spencer argues that this shows that his closing argument was not so prejudicial and inflammatory as to cause the verdict to be excessive.

During closing argument, Spencer's attorney said, "Mr. Spencer is an honest, honorable man, and that is why the Court directed a verdict for him. And he wouldn't be here if he hadn't been wronged by this man and his company." Millstone Marina did not object or allege in its motion for new trial that this statement was improper.

Rule 75.01 authorizes the trial court to grant a new trial on its own initiative. It provides, "Not later than thirty days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and every order granting a new trial shall specify the grounds therefor." As stated in *Sondergard v. Kansas City*

*Power and Light Company,* 826 S.W.2d 20, 22 (Mo.App.1992):

> Rule 75.01 grants the trial court control over its judgments for 30 days after entry of judgment. The rule states that the court may order a new trial on its own initiative no later than 30 days after entry of judgment. The court acts on its own initiative when it grants a new trial for any cause not alleged in the motion for new trial. Thus, the jurisdiction of the trial court to order a new trial on any ground not mentioned in the motion for new trial is limited to the 30 day period after the entry of judgment.

The trial court granted the motion for new trial because the statement made by Spencer's attorney was wrong. The trial court did not direct a verdict as to the issue of liability because it believed that Spencer was an honest and honorable man. The trial court granted the new trial within the 30 days it had jurisdiction over the judgment. "Determining the prejudicial effect of final argument is a matter within the discretion of the trial court, and the trial court's judgment on that matter will not be disturbed unless there was an abuse of discretion." *Hoover's Dairy, Inc. v. Mid–America Dairymen Inc./Special Products, Inc.,* 700 S.W.2d 426, 434 (Mo. banc 1985).

Although Spencer claims that damages were not contested, Millstone Marina contends that damages were contested as to the issue of mitigation of damages. Spencer testified that he could have had a job the day after he was terminated, but he declined it because it was in Kansas City. He also testified that when he secured employment he did not begin work immediately because he did not feel up to it. Hence, we conclude that damages were a contested issue, and the prejudicial effect of Spencer's attorney's closing argument was best judged by the trial court. We find no abuse of discretion.[1]

In its cross-appeal, Millstone Marina asserts that the trial court erred in refusing to instruct the jury regarding a substitute contract or a novation agreement. Millstone offered an instruction saying, "Your verdict must be for [Millstone Marina] if you believe that [Spencer] and [Millstone Marina] entered into a substitute contract or novation agreement subsequent to [Spencer's] termination of the employment agreement entered into between [Spencer] and [Millstone Marina]." Millstone Marina asserts that, because a novation occurred, Spencer is barred from recovering under the first contract.

■■■ To establish a novation, a party must prove: (1) a prior valid obligation, (2) the agreement of all parties to a new contract, (3) the extinguishment of the old contract, and (4) the validity of the new contract. *Ponze v. Guirl,* 794 S.W.2d 699, 702 (Mo.App. 1990). The fact-finder must never presume a novation, and the burden of proof is on the party asserting the novation. *McHenry v. Claspill,* 545 S.W.2d 690, 692 (Mo.App.1976). The parties' intention is the controlling element. "The burden may be met by direct evidence or by reasonable inference of the intent of the parties drawn from the facts and circumstances. Assent to novation may also be proven circumstantially." *Id.* A novation, however, is subject to the same rules as any other contract and must be sufficiently definite to allow the court to determine its exact meaning and to definitely measure the extent of the promisor's liability. *Ponze,* 794 S.W.2d at 702.

■■■ When Millstone Marina terminated Spencer on September 8, 1992, it informed him that it "would like to continue in a relationship with [Spencer] whereby [he] would be employed in a sales capacity, the details of which are discussed in a separate memo." The separate memorandum, dated September 8, 1992, was from Doug Thomson to Spencer, and it said, "Pursuant to our meeting of September 1, 1992, and further discussions with Don Hannah, Offshore Marina of Kansas, Inc. (Offshore) would agree to employ you as an at-will employee in the capacity of a boat salesman[.]"

Millstone Marina claims that the "salesman memorandum" replaced the general

---

1. Because we reach this conclusion, it is not necessary for us to address Spencer's contention that the trial court should have used remittitur to reduce the jury's award if it believed that Spencer was entitled only to attorneys fees, expert witness fees and three months' income.

manager employment contract between Spencer and Millstone Marina. We disagree.

The original employment contract between Spencer and Millstone Marina provided:

## Section Eleven
### MODIFICATION OF CONTRACT

No waiver or modification of this Agreement or of any covenant, condition, or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith and no evidence of any waiver or modification shall be offered or received in evidence of any proceeding, arbitration, or litigation between the parties hereto arising out of or affecting this Agreement, or the rights or obligations of the parties hereunder, unless such waiver or modification is in writing, duly executed as aforesaid and the parties further agree that the provisions of this section may not be waived except as herein set forth.

## Section Twelve
### TERMINATION FOR CAUSE OTHER THAN DISABILITY

Company may terminate Employee's employment under this Agreement at any time for cause. Such termination shall be evidenced by written notice thereof to the Employee, which notice shall specify the cause for termination. For purposes hereof, the term "caues" [sic] shall include, without limitation, the death of the Employee; dishonesty/theft/conviction of a crime/drunkenness/unethical business conduct/or a material breach of this Agreement. The term "cause" shall also include the failure of Employee for any reason, within ten (10) days after receipt by employee of written notice thereof from Company to correct, cause or otherwise alter any insubordination, failure to comply with instructions or other action or omission to act which Company believes does or may materially or adversely affect its business or operations.

Before the memorandum could have become a novation, the parties would have had to extinguish the original contract. *Ponze,*

794 S.W.2d at 702. The original contract provided that no modification or changes in the contract could occur unless they were made in writing. Millstone Marina and Spencer made no written changes. Further, the contract required Millstone Marina, before terminating the contract, to give Spencer written notice specifying the cause for termination. Millstone Marina's notice did not specify the cause. Nor do we find any evidence that Spencer and Millstone Marina agreed to extinguish the original contract. We conclude, therefore, that Spencer retained all his rights under the original contract.

Millstone Marina also asserts that the trial court erred in not giving its instruction regarding mitigation of damages. Millstone Marina wanted the trial court to instruct the jury: "Your verdict must be for [Millstone Marina] if you believe that [Spencer] failed to mitigate his damages by not seeking employment and/or accepting employment when offered to him."

■ One who is damaged by a breach of contract must make reasonable efforts to minimize his damages. If he or she fails to minimize the damages, "the employer [shall be permitted to] reduce damages recoverable by a wrongfully discharged employee by whatever the employee has earned or by reasonable diligence could have earned during the period of his wrongful discharge." *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138, 143 (Mo. banc 1974).

■ Millstone Marina's proffered instruction did not direct the jury to reduce damages; instead, it directed the jury to return a verdict for Millstone Marina if it found that Spencer did not minimize his damages. Hence, the trial court did not err in refusing the instruction.

■ In its last point, Millstone Marina contends that the trial court erred in granting Spencer's motion for directed verdict at the close of all the evidence as to the issue of liability. Millstone Marina asserts that it was an issue for the jury to decide whether any breach of contract occurred or whether Spencer resigned from his employment. We disagree.

We recognize that a directed verdict is a drastic measure. *Vandever v. Junior College District of Kansas City,* 708 S.W.2d 711, 716 (Mo.App.1986). In reviewing the granting of a directed verdict, we must consider all of the evidence in the light most favorable to Millstone Marina, accept as true that which is not entirely unreasonable or opposed to physical laws, accord to Millstone Marina the benefit of all favorable inferences deducible from the evidence, reject all unfavorable inferences, and disregard Spencer's evidence except insofar as it aids Millstone Marina's case. *Id.* Spencer is entitled to a directed verdict only if no reasonable person considering his evidence could rule against him. *Id.* "[Spencer's] proof of a breach of contract claim required proof that a contract existed between the parties, that [Spencer] had certain rights and [Millstone Marina] certain obligations thereunder, that [Millstone Marina] breached the contract, and that [Spencer] suffered damages therefrom." *Id.*

Millstone Marina's entire point is that whether a breach of contract occurred was an issue for the jury, not for a motion for a directed verdict. This is wrong. Millstone Marina did not dispute Spencer's contention that it had entered into an employment contract with him. Its only defense to Spencer's contention of breach of contract was novation.[2] Because this defense was not viable, the trial court was correct in concluding that no reasonable person considering the evidence could conclude that Millstone Marina had not breached the contract.

Doug Thomson testified that on September 1, 1992, he orally terminated Spencer's employment and gave Spencer a list of handwritten reasons for his termination. He said that on September 8, 1992, he also gave Spencer a memorandum notifying him of his termination without stating the cause. Assuming this is true, as we must do in reviewing a directed verdict, Millstone Marina did not establish its compliance with the contract terms for terminating the agreement. It did not give Spencer written notice specifying the cause for termination. The contract defined "cause" as "the failure of Employee for any reason, within ten (10) days after receipt by employee of written notice thereof from Company to correct ... any insubordination [or] failure to comply with instructions ... which Company believes does or may materially or adversely affect its business or operations."

Finally, Millstone Marina argues that Spencer admitted in his testimony that he resigned. "If a person resigns," the marina argues, "then logic dictates that the opposing party cannot be held to have breached the contract by firing him improperly." The testimony to which Millstone Marina refers came during its cross-examination of Spencer:

Q. If I'm correct, what you did is you went into speak with a gentleman by the name of George Gowing, is that correct?

A. That's true.

Q. And you told Mr. Gowing that you were resigning, that you no longer were going to be working for Millstone Marina?

A. I was what?

Q. Resigning?

A. Resigning, yes, sir.

Q. That you no longer were going to be working for Millstone Marina?

A. That's true, sir.

Millstone Marina's contention is without merit. The marina itself referred to its action as termination of the contract. Moreover, Spencer later clarified his testimony: "I left the employee of Millstone Marina, Incorporated on Sunday, October 11, 1992, at approximately 12:30 p.m. I did not feel I should resign because my contract had been terminated, and I had not accepted a new contract from Millstone Marina, Incorporated[.]"

The judgment of the trial court is affirmed.

All concur.

---

2. Millstone Marina raised three other defenses: Spencer's failure to mitigate damages, failure to state a cause of action, and lack of jurisdiction. Millstone Marina does not contend on appeal that the trial court erred in ruling against it on the last two contentions. Failure to mitigate damages was not relevant to liability.