## U. S. SANITARY SPECIALTIES CORP. v. GLOBE INDEMNITY CO.

### No. 10790.

United States Court of Appeals
Seventh Circuit.

June 10, 1953.

James J. Glassner, Chicago, Ill., for appellant.

Leslie H. Vogel, Chicago, Ill., Robert C. Vogel, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action was brought by U. S. Sanitary Specialties Corporation on a "Comprehensive General Liability Policy" issued by the defendant, Globe Indemnity Company. The complaint alleged a loss under said policy and prayed for judgment for the amount the plaintiff had paid to one Annie Peek in compromise of her claim

for injuries alleged to have been caused by the negligence of an employee of the plaintiff, and the expenses of the plaintiff, including attorneys' fees, in defending the action, totaling $4,443.47, plus the additional sum of $500.00 "by reason of the Defendant's vexatious delay, as provided for by the Statutes of the State of Illinois."

Annie Peek filed an action in a state court of Texas against U. S. Sanitary Specialties Corporation alleging that a salesman, an agent of the plaintiff, while acting for the plaintiff, "placed some sort of preparation upon a portion of the floor of the Morris County Court House situated in Daingerfield, Morris County, Texas, which caused said portion of the said floor to become very slippery and unsafe and dangerous to walk upon"; that the preparation was placed on a spot only about five feet in diameter in the center of the hallway of the Court House; that thereafter Annie Peek, while walking across that hallway and while unaware that the spot was slippery, stepped on the spot, slipped and fell, sustaining serious injuries. Annie Peek's complaint further alleged that: "The placing of the preparation on the floor as above alleged was negligence proximately causing plaintiff to fall and sustain the aforesaid injuries." Her compaint prayed for damages of $20,300.00.

U. S. Sanitary Specialties Corporation promptly notified the defendant insurance company of the action filed by Annie Peek, stating that the accident was apparently caused by the negligent application by one of its salesmen of one of its preparations which was being demonstrated for the purpose of selling the product. Globe Indemnity Company refused to defend the suit on the ground that its insurance policy did not cover the loss, but agreed that any settlement made by the plaintiff with Annie Peek should not be construed as a waiver of any provision of the policy or of any right or rights thereunder.

The parties agree that the product which plaintiff's salesman applied to only a spot in the center of the Court House floor was a wax product which the salesman applied to that portion of the floor as a demonstration to induce the county officials to purchase the product; that the rest of the floor, except for this one spot, remained unwaxed; and that after the demonstration to the county officials the wax was not removed from the place where the demonstration had been made. The parties also agree that the demonstration resulted in a purchase and that on the day following the purchase, Annie Peek, in walking across the waxed spot, slipped, fell and was injured.

In the insurance policy here in question the defendant insurance company agreed with the insured, U. S. Sanitary Specialties Corporation, " * * * subject to the limits of liability, exclusions, conditions and other terms of this policy:

"I Coverage A-Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * sustained by any person and caused by accident."

On the face of the policy there were listed the various hazards which might be covered by the policy if the assured desired such coverage and paid the premium therefor. The various hazards named included: (a) Premises-Operations, (b) Elevators, (c) Independent Contractors-Let or Sublet Work, (d) Products (Including Completed Operations), and (e) Contractual. Opposite each of the hazards for which the assured here had purchased coverage there was typed in the amount of advance premium which the assured had paid for such coverage. Under the hazard, "Products (Including Completed Operations)," there had been typed in the word "Excluded," and opposite this hazard the space in which to show the payment of advance premium was left blank.

To determine just what coverage was thus excluded from this policy we must consider the definition of the hazard, "Products (Including Completed Opera-

tions)," which we find defined in the policy under the title, "Definitions," as follows:

"(c) Products Hazard. The term 'products hazard' means

"(1) the handling or use of, the existence of any condition in * * * goods or products manufactured, sold, handled or distributed by the named insured, * * * if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured * * * ;

"(2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured, except * * * (b) the existence of tools, uninstalled equipment and abandoned or unused materials * * * provided, operations shall not be deemed incomplete because improperly or defectively performed * * *."

■ The defendant contends that the personal injury action of Annie Peek against the plaintiff was founded upon a defective condition in the plaintiff's product. But we agree with the trial court that this was not the case, that Annie Peek's complaint was founded on the negligence of plaintiff's salesman in that only a small portion of the floor was waxed, that the remainder was untreated, and that after the demonstration the wax was not removed from the spot. The purpose of a floor wax is to give a smooth, glossy finish to the floor, which, of course, makes the floor more slippery. If the floor had all been so treated or if the wax had been removed from the spot where it was treated, there would have no liability on the plaintiff. Merely waxing a floor is not negligence *per se* and negligence in connection therewith must be shown in order to establish liability. Mack v. Woman's Club of Aurora, 303 Ill.App. 217, 24 N.E. 2d 898.

■ But if the accident could be said to have occurred because of the existence of any condition in the product, that haz-

ard was covered by "Products Hazard (1)," and coverage on such a hazard was expressly excluded in this policy because the plaintiff failed to purchase such coverage.

It also seems clear that in this case the "operation" of the plaintiff here involved —the demonstration of its wax product by the county officials to induce a purchase of the product by the county officials —had been completed when the personal injury plaintiff slipped and fell. The small area on the floor was waxed on December 1, 1951. On December 10, 1951, as a result of the demonstration, the county officials made a purchase of the wax product, and on the following day, December 11th, the accident occurred.

The selling of this type of wax product was a regular part of plaintiff's business. A demonstration of the product to induce purchases was a regular operation in the course of plaintiff's business. This particular demonstration was, at the time of the accident, a "completed or abandoned" operation within the meaning of the policy definition of "operation" given in Paragraph (2) under "Products Hazard." That definition expressly provided that: "* * * operations shall not be deemed incomplete because improperly or defectively performed * * *." The plaintiff's salesman applied the wax to the floor for only one purpose—to procure a sale to the county officials. We think the operation was completed or abandoned when the salesman had finished waxing the spot on the floor for the demonstration and had shown the results to the county officials. We think the completion of the operation could not possibly be considered as occurring later than the time of the sale of the wax to these county officials. Since the accident occurred the day following the sale, it is clear that the operation was completed prior to the accident.

If the accident had been caused by the negligence of the salesman and had occurred while he was applying the wax, the insured would have been covered because in that case the accident would be considered as having arisen out of and having occurred during the operation.

The plaintiff here could also have bought coverage for negligence which caused the injury after the operation had been completed. Since the plaintiff neglected to purchase this type of coverage, it must bear the burden attendant upon an accident which occurred, as in the instant case, after the operation was completed. The cost of indemnity insurance is determined by the hazards which the policy covers. It would be a gross injustice to the insurer to interpret into a policy coverage which the assured had not bought and for which the insurer had not been paid. Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A.2d 920; Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81.

 The plaintiff also insists that the excluded coverage, "Products (Including Completed Operations)," on which the defendant relies, has no application to the instant case because the plaintiff says the wax used in the demonstration was "abandoned" within the meaning of exception (b) of the definition. This hazard is described as completed operations away from the premises of the assured except "(b) the existence of tools, uninstalled equipment and abandoned or unused materials." The plaintiff contends that the wax used in the demonstration was "abandoned." With this contention we cannot agree. The wax was used. It was worked into a spot on the floor. It then lost its identity and became a glossy finish on the floor. In such a situation it would certainly be a strange interpretation to describe the wax as "abandoned or unused material." It seems perfectly clear that this exception to "completed operations" refers only to tools, equipment and materials which on completion of an operation should have been removed by the assured from the premises where the operation occurred but which, instead, were abandoned there by the insured and later were instrumental in causing an accident.

Finally, the plaintiff contends that the insurer here was bound under Insuring Agreement II of the policy to defend the plaintiff against the action of Annie Peek. That provision of the policy says:

"*As respects the insurance afforded by the other terms of this policy the company shall:*

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *." (Our emphasis.)

 We see that by the above provision the promise to defend actions was limited to actions arising out of hazards which were covered by the policy. Since the personal injury complaint here involved showed on its face that it arose out of a products hazard and that the operation had been completed at the time of the accident, hazards which had been expressly excluded from the policy, the defendant was under no duty to defend against the action. Hardware Mutual Casualty Co. v. Schantz, 5 Cir., 186 F.2d 868, 872. On this point see also Baker v. Maryland Casualty Co., 73 R.I. 411, 56 A.2d 920; Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81.

The judgment of the District Court is affirmed.