**SHELTER MUTUAL INSURANCE CO., Appellant,**

v.

**John and Vivian DeSHAZO, et al., Respondents.**

No. 21295.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 4, 1997.

Kenneth A. Wagoner, Brill, Moore & Wagoner, P.C., West Plains, for appellant.

William C. Love, Harrison, Tucker & Hyde, Springfield, for Respondents DeShazo.

Randy R. Cowherd, Newberry, Haden, Cowherd, Bullock & Keck, L.L.C., Springfield, for Respondents Smith and Rankin.

Before PARRISH, P.J., and SHRUM and BARNEY, JJ.

PER CURIAM.

Shelter Mutual Insurance Co. (Shelter) appeals a summary judgment in a declaratory judgment action. The judgment declared that liability coverage provided by a certain policy of insurance issued by Shelter applied to all claims asserted against John DeShazo and Vivian DeShazo arising from an accident that occurred at a residence constructed by Mr. DeShazo. This court reverses and remands.

On September 1, 1994, a deck collapsed on a house located in Christian County owned by Craig Smith and his wife, Jeannine Rankin. One or more social guests were present in the home when the accident occurred.

Mr. Smith and Ms. Rankin purchased the residence from Michael and Theresa Socha. Mr. and Mrs. Socha acquired the property from Mr. and Mrs. DeShazo April 30, 1991. The house and deck had been completed before the Sochas purchased the property.

The basis for the trial court granting summary judgment was Mr. Smith's and Ms. Rankin's claim that the deck collapsed because of "uninstalled equipment." The claim is based on the finding of consulting engineer Frank Young "that there were at least two pieces of uninstalled equipment which caused the deck to collapse: blocks that support the wooden columns, and bolts to secure the deck to the house structure."

At the time of the accident, Mr. and Mrs. DeShazo were insured by a "General Liability Policy" issued by Shelter. Shelter was notified of claims against the DeShazos based on personal injuries sustained by persons who had been on the deck when it collapsed. Shelter filed this action seeking determination of its liability under its General Liability Policy.

The pertinent part of the policy's "insuring agreement" states:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) *The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III);* and

. . . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury". [Emphasis added.]

. . . . .

Section III of the policy is entitled "LIMITS OF INSURANCE." It provides:

1. *The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay* regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

.  .  .  .  .

3. *The Products–Completed Operations Aggregate Limit is the most we will pay* under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-complet-

ed operations hazard". [Emphasis added.]

.  .  .  .  .  .

The declarations page of the policy states the policy period. It states the nature of the insured's business as "carpentry"; that he is an individual. It states the "audit period" is "annually". It then provides:

SUBJECT TO THE TERMS OF THIS POLICY, THE COMPANY'S LIMITS OF LIABILITY FOR THE COVERAGES PROVIDED UNDER THIS POLICY ARE AS FOLLOWS:

LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE (OTHER THAN PRODUCTS–COMPLETED OPERATIONS) | $100,000 |
| *PRODUCTS–COMPLETED OPERATIONS AGGREGATE LIMIT (SEE EACH CLASSIFICATION BELOW)* | *EXCLUDED* |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 50,000 |
| EACH OCCURRENCE LIMIT | $ 50,000 |
| FIRE DAMAGE LIMIT | $ 50,000 ANY ONE FIRE |
| MEDICAL EXPENSE LIMIT | $ 5,000 ANY ONE PERSON |

[Emphasis added.]

The "limits of insurance" on the declarations page is followed by an itemization of "COVERAGE PARTS AND ENDORSEMENTS ATTACHED TO AND FORMING PART OF THIS POLICY." One of the endorsements listed is "CG–21–04 (11–85) EXCLUSION—PRODUCTS—COMPLETED OPERATIONS HAZARD." It appears as an attachment to the insuring agreement and states:

### EXCLUSION—PRODUCTS—COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."

Paragraph 14 of the definitions section of the insurance policy, Section V, prescribes what is included in the policy's "products-completed operations hazard." It provides, as is applicable to the facts disclosed in this case with respect to the motions for summary judgment:

a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

.  .  .  .  .

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

.  .  .  .  .

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

.  .  .  .  .

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; . . . .

This court's review of a summary judgment is governed by established principles. The review is essentially *de novo*. *American Nat. v. Noble Communications*, 936 S.W.2d 124, 131 (Mo.App.1996). The record is reviewed in the light most favorable to the party against whom judgment was entered. *Id.* The non-movant is afforded the benefit of all reasonable inferences from the record. *Id.* However, if the judgment is sustainable on any basis, it will not be overturned. *Gabriel v. Shelter Mut. Ins. Co.*, 897 S.W.2d 119, 120 (Mo.App.1995).

Shelter presents four allegations of trial court error. The first two, Points I and II, relate to the construction of the insurance policy Shelter issued to Mr. and Mrs. DeShazo. The third, Point III, relates to the applicability of the provisions of the policy issued in view of a claim that "the appropriate classification code was not assigned in the declarations of the policy." The final point, Point IV, contends the trial court erred in not granting Shelter's motion for summary judgment.

In construing the terms of the policy of insurance in question, the policy must be considered as a whole. *Gabriel*, 897 S.W.2d at 120. Detached provisions or clauses are not considered independent of other policy provisions. *Id.* The policy is construed as written. "The court's function is to construe, not make, insurance contracts." *Id.* at 121.

Points I and II will be discussed together in that both relate to interpretation of the language of the insurance policy. Point I asserts the insurance policy does not provide coverage because the house and deck where the accident occurred were completed when the DeShazos sold the property in April 1991, and the accident did not occur until September 1994. Point II contends the insurance policy does not provide coverage because the claim is based on an absence of materials that should have been included in the deck, not on the existence of uninstalled equipment.

Under the terms of the policy of insurance Shelter issued, Shelter is not liable for personal injuries if the circumstances of the injury fall within its policy's definition of "products-completed operations hazard."

That coverage was not provided by reason of an exclusion attached to and made part of the policy.

The applicable definition of "products-completed operations hazard," under the facts of this case that were before the circuit court, was "work done at a job site [that] has been put to its intended use by any person ... other than another contractor or subcontractor working on the same project."

The work done by Shelter's insureds, the DeShazos, was construction of the house and deck in question. The house and deck had been put to its intended use by its occupants, first the Sochas and then the present owners, a considerable time before the accident occurred. To the extent Point I is predicated on the language of the "products-completed operations hazard" provision of its policy, and had that coverage not been excluded, the point would be well-taken. However, the facts are otherwise. The "products-completed operations hazard" coverage was excluded. Point I is moot.

■ Point II is directed to the trial court's determination that there was liability because the record disclosed there was uninstalled equipment. Shelter argues:

> Smith and Rankin allege in their motion for summary judgment that "Shelter's insureds, the DeShazos, failed to install equipment which caused the deck to collapse ..." The affidavit of Smith and Rankins' [sic] engineer, Frank Young, states as follows:
>
> > My investigation revealed that there were at least two pieces of uninstalled equipment which caused the deck to collapse: blocks that support the wooden columns, and bolts to secure the deck to the house structure.
>
> The engineer's affidavit shows that the deck collapsed due to the *absence* of materials which should have been included in the deck; however, the uninstalled equipment clause of the policy provides for coverage only when the injury arises from the *existence* of uninstalled equipment at the job site. [References to legal file omitted.]

This court finds no Missouri case, nor do any of the parties cite a Missouri case, that interprets the language, "[t]he existence of tools, uninstalled equipment or abandoned or unused materials," in an insurance policy. The 7th Circuit, however, interpreted this clause in *U.S. Sanitary Specialties Corp. v. Globe Indemnity Co.*, 204 F.2d 774 (7th Cir. 1953), a case applying Illinois law. It held the language "refers only to tools, equipment and materials which on completion of an operation should have been removed by the assured [sic] from the premises where the operation occurred but which, instead, were abandoned there by the insured and later were instrumental in causing an accident." *Id.* at 777.

The Court of Appeals of Georgia also construed the language. It held the language "was intended to apply to equipment placed on the premises in connection with the insured's operations." *Travelers Ins. Co. v. Ty Company Services, Inc.*, 197 Ga.App. 787, 399 S.E.2d 562, 564 (1990).

The record on appeal reveals no issue over a material fact insofar as the basis for the trial court's awarding summary judgment. As such, the interpretation of the policy language is a question of law. *Woodfill v. Shelter Mut. Ins. Co.*, 878 S.W.2d 101, 103 (Mo. App.1994). This court finds *U.S. Sanitary Specialties Corp. v. Globe Indemnity Co.*, *supra*, and *Travelers Ins. Co. v. Ty Company Services, Inc.*, *supra*, persuasive. The trial court's determination that the facts before it disclosed "[t]he existence of tools, uninstalled equipment or abandoned or unused materials" was a misapplication of law. Point II is granted.

Point III is directed to a claim the DeShazos made in the trial court that the insurance policy they obtained from Shelter should have provided "products-completed operations hazard" coverage. Mr. and Mrs. DeShazo asserted the policy they received did not include that coverage because Shelter assigned an erroneous "classification number" to it. Mr. DeShazo argued that the classification number assigned was for "carpentry—construction of residential property not exceeding 3 stories in height." Nevertheless, in his deposition Mr. DeShazo stated

he constructed residential homes; that none of the residences he had constructed exceeded three stories in height.

■ Regardless, Mr. and Mrs. DeShazo accepted the insurance policy as written. The policy was first issued to the DeShazos in 1992 for one year. It was renewed annually up to and including March 26, 1995. An insured is bound by a policy of insurance regardless of whether the insured has read the policy if the policy is maintained by the insured for an unreasonable period of time. *Hartford Accident & Indem. Co. v. Farmington Auction*, 356 S.W.2d 512, 519 (Mo.App. 1962). *See also Community Title v. Safeco Ins. Co.*, 795 S.W.2d 453, 460 (Mo.App.1990); *Young v. Ray America, Inc.*, 673 S.W.2d 74, 79 (Mo.App.1984).

The trial court did not make findings of fact or conclusions of law. This court is unable to ascertain whether the trial court, in fact, based its award of summary judgment on a determination that the DeShazos' insurance policy should have included "products-completed operations hazard" coverage. The record that was before the trial court would not have supported that determination. To that extent, Shelter's Point III is well-taken.

■ Shelter's final point asserts trial court error in denying Shelter's motion for summary judgment. Denial of a motion for summary judgment does not present an appealable issue. *Ferguson v. Wozniak Industries, Inc.*, 931 S.W.2d 919, 923 (Mo.App.1996); *Lake Center Boatworks, Inc. v. Martin*, 804 S.W.2d 842, 844 (Mo.App.1991). To the extent *Sharpton v. Lofton*, 721 S.W.2d 770 (Mo. App.1986), decided by the Eastern District of this court, may indicate otherwise, this district declines, as has the Western District in *State v. Sure–Way Transp., Inc.*, 884 S.W.2d 349, 352 (Mo.App.1994), to follow it. Point IV is denied.

The judgment is reversed. The case is remanded for further proceedings.