# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3503

_____

| | | |
|---|---|---|
| Tonicstar Limited, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Lovegreen Turbine Services, Inc., | * | District of Minnesota. |
| | * | |
| Appellant, | * | |
| | * | |
| Flint Hills Resources LP, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: May 17, 2007
Filed: August 1, 2008

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

A cloth rag remaining in an oil refinery compressor caused several million dollars in business interruption damages. Tonicstar Limited, one of the insurers of Lovegreen Turbine Services, the company who serviced the compressor, brought this declaratory judgment action claiming it had no duty to defend or indemnify Lovegreen

in an action for damages brought by the owner of the oil refinery.  The district court[1] granted Tonicstar's motion for summary judgment, concluding the insurer did not owe Lovegreen a duty to defend or indemnify.  We affirm.

I

Lovegreen is a service provider which is in the business of servicing turbines, generators, and compressors.  Flint Hills Resources, LP, is the owner of a crude oil refinery near Rosemount, Minnesota (the Pine Bend facility).  In 2003, Flint Hills hired Lovegreen to overhaul a compressor at the Pine Bend Facility.  It asked Lovegreen to be "responsible for the disassembly, cleaning, inspection, repairs as necessary, . . . reassembly of the compressor[, and] inspection of the gear box." App. 147.  Lovegreen worked on the compressor around the clock from September 8 through September 24.  In connection with the work, a large container of cloth rags were used to wipe the compressor during the overhaul.

After Lovegreen's work was complete, Flint Hills placed the compressor back into service.  Initially, the compressor ran as designed.  One week later, however, Flint Hills shut down the compressor because a charge pump at the refinery failed. When Flint Hills restarted it the same day, it vibrated excessively and created a large volume of unusual noise.  Flint Hills again shut down the compressor, inspected it, and found a cloth rag and cloth fragments lodged inside. Flint Hills instructed its own employees to remove the cloth rag and fragments, repair the compressor, and place it back in operation as quickly as possible.  It documented its inspection and repair with photographs and saved the cloth fragments found inside the compressor.  The compressor was out of service for five days, causing Flint Hills to incur loss of business damages exceeding $6.5 million.

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

After returning the compressor to service, Flint Hills began pursuing Lovegreen's liability insurers to recoup its damages. Lovegreen had $2 million in primary insurance coverage through Liberty Mutual Fire Insurance Company. A commercial umbrella policy issued by a syndicate of six insurers through Lloyd's of London provided additional coverage in excess of $2 million. Liberty Mutual and five of the six subscribing Lloyd's of London syndicate agreed to pay their share of the business loss. The holdout – Tonicstar – refused to pay. As a result, Flint Hills brought suit against Lovegreen raising claims of negligence and breach of contract premised on its failure to perform the overhaul in a workmanlike manner by leaving the cloth rag inside the compressor. Flint Hills claimed loss of business damages in the amount of $1.7 million (the part remaining unpaid), as well as $29,500 for the cost of repairs to the compressor.

The insurance policy issued to Lovegreen by Tonicstar generally provided coverage "for Bodily Injury and Property Damage arising from the rendering of or failure to render Professional Services," App. 49, but contained several exclusions. As relevant, Exclusion D.2.f. excluded coverage for "**Property Damage** to . . . that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it." An exception to Exclusion D.2.f. restored coverage for "**Property Damage** included in the **Products-Completed Operations Hazard**." Id. at 43. The policy defined **Property Damage** as:

1.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.      Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

-3-

Id. at 61.  The policy defined **Your Work** as:

1.      Work or operations performed by you or on your behalf; and

2.      Materials, parts or equipment furnished in connection with such work or operations.

Id. at 62.  Endorsement No. 1 added the following definition of **Work**: "The entire completed construction or the various separately identifiable parts required to be furnished under the contract documents."  Id. at 51.

After Flint Hills sued Lovegreen, Tonicstar brought this declaratory judgment action against Lovegreen and Flint Hills asking the district court to declare Tonicstar had no duty to defend or indemnify Lovegreen in the action brought by Flint Hills. Tonicstar moved for summary judgment arguing Flint Hills' damages were excluded pursuant to several of the policy's exclusions, including Exclusion D.2.f.  The district court granted Tonicstar's motion for summary judgment, concluding Exclusion D.2.f. applied.  The district court further concluded the exception to Exclusion D.2.f. for property damage included in the Products-Completed Operations Hazard did not apply because such coverage excluded "**Property Damage** arising out of . . . the existence of tools, uninstalled equipment or abandoned or unused materials."  Id. at 61.  The district court concluded the cloth rag left in the compressor constituted "abandoned or unused materials."

Lovegreen filed a timely appeal.  On appeal, it contends the district court erred in three respects.  First, the argument about keeping a rag out of the compressor was not part of its "work" within the meaning of the policy.  Second, it is contended the district court erred in concluding the cloth rag was  "abandoned or unused materials," and Flint Hills' loss of business damages should have been covered under the policy's Products-Completed Operations Hazard provisions.  Finally, Lovegreen argues that, even if Exclusion D.2.f. applies to exclude coverage, the exclusion does not apply to

the $1.7 million in loss of business damages, but only to the $29,500 in repairs to the compressor itself.

## II

Both the district court's grant of summary judgment, and its interpretation of the terms of the insurance policy, are reviewed de novo. Macheca Transport Co. v. Phila. Indem. Co. , 463 F.3d 827, 831 (8th Cir. 2006).

We agree with the district court that Exclusion D.2.f., which excludes coverage for property damage to property which must be repaired because the insured's work was incorrectly performed, applies. Cloth rags were part of the materials Lovegreen furnished in connection with the overhaul of the compressor. In addition, using the cloth rags to wipe the compressor during the overhaul was part of the work or operations performed by Lovegreen. As a consequence, leaving a cloth rag inside the compressor falls within the policy's definition of work. Such conduct triggers Exclusion D.2.f. because it indicates Lovegreen's work was incorrectly performed, and the compressor required repair as a result. Furthermore, the $6.5 million in business interruption damages Flint Hills suffered while the compressor was being repaired is excluded from coverage because the policy's definition of property damage encompassed not only physical injury to the property affected by the defective work, i.e., the cost of the compressor repairs, but also the resulting loss of use of the property. See, e.g., TGA Dev., Inc. v. N. Ins. Co. of New York, 62 F.3d 1089, 1091 (8th Cir. 1995) (interpreting a "loss of use" provision under Minnesota law, and explaining that loss of use of property resulting from defective work falls "outside the coverage" of such policies).

Lovegreen contends, however, that keeping a rag out of the compressor was not part of its "work" as defined by the policy. It relies upon the additional definition of "work" under Endorsement No. 1 which, as stated above, provided in part that "work"

is "the various separately identifiable parts required to be furnished under the contract documents." App. 51. It contends a final inspection to remove foreign material from the compressor was not part of the work it was required to furnish under the contract documents.

Even assuming arguendo a final inspection to remove foreign material was not specifically mentioned in the contract, Lovegreen's argument nonetheless fails. The definition of "work" in Endorsement No. 1 does not replace the definition of "Your Work" in the main body of the policy. Endorsement No. 1 specifically provides "that the following *additional* Definitions shall apply." Id. (emphasis added). In other words, both the definition of "Your Work" and the definition of "Work" in Endorsement No. 1 apply. Thus, leaving a cloth rag in the compressor could constitute Lovegreen's "work" under either definition. After all it provided a large container of cloth rags to the Pine Bend facility, the purpose of which was to wipe the compressor during the overhaul. Lovegreen then used the cloth rags during the overhaul and left one inside the compressor. This conduct clearly falls within the policy's definition of "[w]ork or operations performed by [Lovegreen]," as well as "[m]aterials . . . furnished in connection with such work or operations." Id. at 62.

Lovegreen further contends the loss involved here should have been included in the Products-Completed Operations Hazard coverage, which was excepted from Exclusion D.2.f. The policy provided, however, that there was no Products-Completed Operations Hazard coverage for property damage arising out of the existence of tools, uninstalled equipment or abandoned or unused materials, and the district court concluded the cloth rag constituted abandoned or unused materials. We agree. This interpretation of the policy is consistent with the conclusion reached by the few courts which appear to have interpreted this exception for "abandoned or unused materials." See U.S. Sanitary Specialties Corp. v. Globe Indem. Co., 204 F.2d 774, 777 (7th Cir. 1953) (recognizing the provision applied to "tools, equipment and materials which on completion of an operation should have been removed by the

assured from the premises where the operation occurred but which, instead, were abandoned there by the insured and later were instrumental in causing an accident."); see also Liberty Mut. Ins. Co. v. Am. Home Assurance Co., Inc., 858 N.E.2d 530, 538-39 (Ill. App. Ct. 2006) (concluding a temporary ramp the insured left at the worksite fell within the exception for "abandoned" materials); Shelter Mut. Ins. Co. v. DeShazo, 955 S.W.2d 234, 238 (Mo. Ct. App. 1997) (adopting the reasoning from Sanitary Specialties in interpreting the "abandoned or unused materials" provision).

Finally, Lovegreen contends, even if Exclusion D.2.f. applies, it only excludes the cost of restoring the compressor to operation, that is, the $29,500 Flint Hills spent to repair the compressor, but does not exclude the $6.5 million Flint Hills lost in business while the compressor was out of service for five days. As we explained above, this policy's definition of property damage included not only the physical injury to the property which required repairs because of incorrectly performed work, but also specifically encompassed the "resulting loss of use of that property." App. 61. As a consequence, the exclusion of the $6.5 million in business interruption damages is "compelled by the plain words of the polic[y]." TGA Development, 62 F.3d at 1091.

III

We affirm the judgment of the district court.

BEAM, Circuit Judge, dissenting.

Lovegreen contracted with Flint Hills Resources (FHR or Flint Hills) to be "responsible for the disassembly, cleaning, inspection, repairs as necessary [of the compressor] and reassembly of the compressor . . . [and] inspection of the gear box." This was the "work" agreed upon and was "Your [Lovegreen's] Work" as defined in the coverage clauses of the insurance policy at issue here. In completing this work

(and it was clearly a completed operation contemplated by the insurance contract language), Lovegreen negligently left a cleaning rag inside the compressor which act led to property damage, i.e., loss of use of the compressor, a covered loss. The court majority's conclusion to the contrary is error. Thus, I dissent.

Under Endorsement No. 12, Appendix at 39, Lovegreen was a named insured under the insurance policy in force here. Liberty Mutual was the primary underwriter under the contract. A six-member syndicate organized by Lloyd's of London provided bumbershoot (umbrella) coverage above the limits of the primary policy, which limits were exceeded in this case. There can be no dispute that Lovegreen was negligent and that the loss was in excess of $6.5 million. Liberty Mutual and five of the six members of the syndicate recognized their coverage obligations and agreed to pay a contractually designated share of the loss. Tonicstar, on the other hand, refused to do so and now mounts a convoluted and unsupportable coverage defense involving unrelated and incongruent portions of the policy, which defense the district court and the court majority adopt, at least in part.

Liberated from Tonicstar's misdirecting hyperbole, the policy language applicable to this loss is relatively straightforward.[2] In consideration of the premium paid, Lovegreen purchased "Products-Completed Operations Hazard" coverage under the policy. Item 3, Limits of Insurance, Appendix at 52. The Products-Completed Operations Hazard

> includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

---

[2]If ambiguous, "it [should] be construed against [Tonicstar], as drafter of the contract." Progressive Specialty Ins. Co. v. Widness, 635 N.W.2d 516, 518 (Minn. 2001) (citing Current Tech. Concepts, Inc. v. Irie Enters., Inc. 530 N.W.2d 539, 543 (Minn. 1995)).

> a.                    products that are still in your physical possession; or
>
> b.                    work that has not yet been completed or abandoned.

Policy, § IV.J.l.a-b.  Neither a. nor b. above are pertinent to the facts of this case.

> "Your Work," in turn, is defined, in relevant part, as
>
> 1.    Work or operations performed by [Lovegreen] or on [Lovegreen's] behalf; and
>
> 2.    Materials, parts or equipment furnished in connection with such work or operations.

Policy, § IV.N.1-2.[3]  In this environment, this can only mean, as the contract specifies, the disassembly, cleaning, inspection, repair and reassembly of the compressor or furnishing materials, parts or equipment in connection with these specified obligations.  By clear language and any reasonable implication therefrom, the agreed upon work did *not* include negligently leaving a cleaning rag alien to the effective use of the compressor within the machine. One strains to understand how an exotic item such as this piece of cloth can possibly be defined as "materials, parts or equipment furnished [to Flint Hills] in connection with such [contract-specific] work or operations."

---

[3]A policy endorsement provides an additional "Your Work" definition that states that work is "the various separately identifiable parts required to be furnished under the contract documents." Endorsement No. 1.  This, of course, would not place an errant cleaning rag among the parts required by the work agreement.

"Property Damage" is

1.     Physical injury to tangible property [the compressor], including all resulting loss of use of that property [the compressor]. . . . ; or

2.     Loss of use of tangible property that is not physically injured.

Policy, § IV.K.1-2. Accordingly, absent other policy language to the contrary, Lovegreen's negligence in completing its work led to loss of use of the compressor, a species of property damage insured under the Products-Completed Operations Hazard.

But, posits Tonicstar,

This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

a.     the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

b.     the existence of tools, uninstalled equipment or abandoned or unused materials.

Policy, § IV.J.3.a-b.

Tonicstar and the court majority contend the above J.3.b. language excludes the loss of use damages claimed by Flint Hills from the completed operations coverage because the errant cleaning rag was "abandoned or unused material[]."

-10-

The problem with this slippery slope is that the lost rag was not "abandoned or unused material[]," and the language of b. and case precedent establish such an interpretation.

The majority cites in support of its contentions U.S. Sanitary Specialties Corp. v. Globe Indemnity. Co., 204 F.2d 774 (7th Cir. 1953). This particular case, however, runs almost wholly in the opposite direction.

A Sanitary Specialties salesman had placed, but did not remove, a circle of wax on the courthouse floor as a sales tool to be used in selling Sanitary's floor wax to county officials. The next day after the sale, Annie Peek slipped on this spot and fell. Peek sued Sanitary and its salesman for damages and Sanitary tendered the claim to Globe Indemnity who denied coverage. Sanitary brought suit against Globe seeking a determination of coverage under the policy. The district court and the Seventh Circuit first determined that the underlying allegations fell within the Products-Completed Operations Hazard in Globe's policy. Id. at 776. But then, the courts further determined that Sanitary Specialties had not purchased such coverage. Id. at 777. On appeal, Sanitary argued that the exclusion announced in J.3.b., (i.e., that "'the existence of tools, uninstalled equipment and abandoned or unused materials'" was "except[ed]" from Globe's Products-Completed Operations Hazard) permitted it to seek coverage under another hazard in Globe's policy that it had purchased. Id. at 776-77. The Seventh Circuit rejected this contention. In doing so, it noted that the "exception to completed operations" articulated by Sanitary "refers only to tools, equipment and materials which on completion of an operation should have been removed by [Sanitary] from the *premises* where the operation occurred but which, instead, were abandoned there by [Sanitary] and *later were instrumental in causing an accident.*" Id. at 777 (emphasis added). The court noted that the wax was not abandoned and unused material. Neither was Lovegreen's cloth, and while it gradually caused the compressor to malfunction, it did not cause a later premises

-11-

accident involving FHR or anyone else. Had the used cleaning rag at issue here been left on the floor by Lovegreen, later causing a slip, trip or fall, actionable damages arising from this act would have been excluded under the Products-Completed Operations Hazard under the Seventh Circuit's interpretation. The occurrence activating Lovegreen's completed operations coverage was the negligent act of leaving the rag inside the compressor when completing the work it was hired to do. And, of course, Lovegreen was not hired to leave a deviant piece of cloth inside the compressor it was employed to service.

The other cases cited by the court are likewise unhelpful, indeed they reenforce the proper interpretation of the exclusion from the Products-Completed Operations Hazard. Liberty Mutual Insurance Co. v. American Home Assurance Co., Inc., 858 N.E.2d 530, 533 (Ill. App. Ct. 2006), involved a temporary ramp the insured left at the work site over which Ms. Palcowski, the underlying claimant, tripped and fell. Shelter Mutual Insurance Co. v. DeShazo, 955 S.W.2d 234 (Mo. Ct. App. 1997) (per curiam), dealt with a dispute over the collapse of a deck DeShazo had earlier completed at a residence in Christian County, Missouri. The case proves nothing about whether a negligently placed cleaning rag can serve to displace completed operations coverage. Like Sanitary Specialties, DeShazo did not purchase completed operations coverage and, as a result, attempted to place the deck collapse outside that particular hazard. In support, DeShazo's expert engineers opined that two pieces of uninstalled equipment caused the collapse, arguing that this was the "uninstalled equipment" mentioned in the J.3.b. clause set forth above. Id. at 237. The Missouri Court rejected this argument, adopting the Sanitary Specialties definition and finding the loss to be within the Products-Completed Operations Hazard that had not been purchased by DeShazo. Id.

Finally, Tonicstar argues that a general exclusion found in section V.D., Appendix 62, as modified by Endorsement No. 9, Appendix at 43, removes Flint Hills' property damage from coverage. The cited policy language says

> V.    Exclusions
>
> This insurance does not apply to:
> . . .
> D. 2.  Property Damage to
>
>> . . .
>> f.    That particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Appendix at 43, 62. Unfortunately for Tonicstar, the Endorsement further states "paragraph f. does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**." And, of course, Flint Hills' property damage (loss of use in this case) fell within the Products-Completed Operations Hazard purchased by Lovegreen. Tonicstar's fellow syndicate members were correct. The property damage sustained by Flint Hills represents a covered loss under the insurance policy. The court's determination to the contrary is error. Indeed, if the Products-Completed Operations Hazard does not provide risk abatement under the facts and circumstances of this case, it is difficult to envision what benefit an insured receives in return for the substantial premium that insurers such as Tonicstar collect for their purported coverage.

The district court should be reversed. Accordingly, I dissent.

_____